**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**JEANETTE R. SANDOVAL,**

**Plaintiff,**

**v.** **Civ. No. 25-1211 GJF/LF**

**UNIQUE INSURANCE COMPANY,**

**Defendant.**

## MEMORANDUM OPINION AND ORDER

This insurance class action case is before the Court on Defendant Unique Insurance Company's ("Unique's") Motion to Dismiss for Failure to State a Claim [Dkt. Nos. 25 and 27]. Plaintiff Jeanette R. Sandoval ("Plaintiff") responded [Dkt. Nos. 30, and 31], and Unique replied [Dkt. Nos. 32 and 33]. Therefore, the motion is fully briefed. On July 13, 2026, the Court held oral argument on the motion. After considering the briefing, the arguments of counsel, and the law, the Court concludes that the motion to dismiss should be granted because Plaintiff's claims are untimely under New Mexico law.

## Procedural and Factual Background

At the center of this case is a motor vehicle insurance policy ("the Policy") issued to Plaintiff by Unique. According to the Complaint [Dkt. No. 1-1], the Policy was effective May 18, 2019, through June 18, 2019, and provided liability coverage on one automobile for $25,000 per person and $50,000 per accident. *Id*. at ¶¶ 7-9. On May 21, 2019, three days after the Policy went into effect, Plaintiff's husband (Leo Sandoval) was involved in an automobile accident. Leo Sandoval made a claim under the Policy, but Unique declined coverage on the basis that he was

an "excluded person" under the Policy. In response, Leo Sandoval argued that the exclusion was improper under New Mexico law. In March 2022, Leo Sandoval filed suit ("the Coverage Case") against Unique in New Mexico state court asserting coverage for the accident, along with claims for breach of contract, uninsured motorist ("UIM") benefits, unfair insurance claim practices, unfair trade practices, breach of the duty of good faith and fair dealing, and negligence. Dkt. No. 25-1. Plaintiff Jeanette Sandoval was not a party to the Coverage Case, nor was she involved in the accident. In September 2023, Unique settled the Coverage Case, paying Leo Sandoval a sum certain known to the parties in the instant case. The Release ("the Release") signed by Leo Sandoval states that he is releasing all claims "related to a vehicle accident . . . on or about May 21, 2019[.]" Doc. No. 25-2. Plaintiff Jeanette Sandoval was not a signatory to the Release.

Two years later, on September 9, 2025, Plaintiff filed her Class Action Complaint [Dkt. No. 1-1] ("the Class Action") against Unique in New Mexico state court. Plaintiff attached the Policy and its declarations page to the Complaint as Exhibit 1. According to the Complaint, the Policy documents, forms, and declarations "misrepresented or failed to clearly disclose that the UIM[1] coverage was subject to the *Schmick* offset[2] and thus … provided no real value," *id*. at ¶ 12, and that Unique "fraudulently concealed the nature of its UIM coverage and induced insureds to purchase worthless or near-worthless protection." *Id*. at ¶ 15. Based on her allegation that Unique did not adequately disclose the *Schmick* offset, Plaintiff asserts a putative class action, *id*. at ¶¶ 29-47, and pleads claims for negligence, *id*. at ¶¶ 48-56, violation of the New Mexico Unfair Trade Practices Act, *id*. at ¶¶ 57-65, violation of the New Mexico Unfair Insurance Practices Act, *id*. at

[1] In this opinion, the Court refers both to uninsured motorists ("UM") and underinsured motorists ("UIM"). *See, e.g., Jordan v. Allstate Ins. Co*., 149 N.M. 162, 164, 245 P.3d 1214 (N.M. 2010).

[2] New Mexico's *Schmick* offset rule, which is further described herein, stems from *Schmick v. State Farm Mut. Auto. Ins. Co*., 103 N.M. 216, 704 P.2d 1092 (N.M. 1985).

¶¶ 66-79, reformation of the insurance policy[3], *id*. at ¶¶ 80-87, breach of the covenant of good faith and fair dealing, *id*. at ¶¶ 88-94, negligent misrepresentation, *id*. at ¶¶ 95-104, unjust enrichment, *id*. at ¶ ¶ 105-108, declaratory judgment, *id*. at ¶ ¶ 109-112, and injunctive relief, *id*. at ¶¶ 113-116. Leo Sandoval is not a named plaintiff in the Class Action, which Unique removed to this Court on December 4, 2025, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Unique moves to dismiss the complaint on four grounds. First, it contends that all of Plaintiff's claims have been released as a result of the Release signed by Leo Sandoval in the Coverage Case, and therefore this case is moot. Second, Unique argues that Plaintiff's claims are time-barred. Third, it asserts that Plaintiff lacks standing to seek prospective injunctive relief. And fourth, Unique contends that all of Plaintiff's causes of action fail to state a claim and should be dismissed under Rule 12(b)(6). The Court reaches only the first two arguments.

## LEGAL STANDARD ON A MOTION TO DISMISS

On a motion to dismiss, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 309 (2007). The court does not "take as true the complaint's legal conclusions." *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011). There is no fact-finding, and the court must accept well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: the Court must view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in plaintiff's favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the district court to decide only one, largely legal question: whether the facts

[3] At the July 13, 2026, hearing, counsel for Plaintiff agreed that reformation is a remedy, not a cause of action. As such, it has no statute of limitations.

alleged, taken as true, plausibly state a claim upon which relief can be granted. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).

The court should "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (quoting *Tellabs*, 551 U.S. at 322). "In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue." *Bruce v. Cty and Cnty of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023).

In light of these authorities, the Court will consider the allegations of the Class Action Complaint and the attachments thereto (to include the Policy's declaration pages and the Policy itself), the Complaint in the Coverage Case (Dkt. No. 25-1), and the Release signed by Leo Sandoval in the Coverage Case (Dkt. No. 25-2). As to the latter two documents, although they are not discussed in Plaintiff's Complaint in this case, both parties discuss them and rely upon them in their briefs, and neither party disputes their authenticity. Neither party suggests that the Court should not consider any of these documents on a motion to dismiss.

## Discussion

### I. Plaintiff's Claims Were Not Mooted by Her Husband's Release in Earlier Case

The Constitution gives federal courts the power to adjudicate only genuine cases and controversies. *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021) (en banc). This requires a plaintiff to have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision by the court. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019). "Mootness is a threshold issue because the existence

of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1113 (10th Cir. 2016) (cleaned up).

Unique argues that Plaintiff's claims are moot and the Court lacks subject matter jurisdiction over this case because Leo Sandoval's claims to coverage under the insurance policy have already been settled and released. According to Unique, the broad language of the Release extends to Plaintiff's claims in this case. In response, Plaintiff argues that the settlement in the Coverage Case reached only the question of whether Leo Sandoval was a covered driver in the May 2019 accident, and that Leo Sandoval did not and could not release Plaintiff's unrelated claims against Unique stemming from its failure to disclose the *Schmick* offset.

After reviewing the Release and Indemnity Agreement ("the Release), Dkt. No. 25-2, the Court agrees with Plaintiff. On the record currently before the Court, Unique has failed to show that the release signed by Leo Sandoval applies to Plaintiff's claims in this case. First, only Leo Sandoval was a party to the Coverage Case and the Release; Plaintiff was neither a party in the case nor a signatory to the Release, and there is nothing in the record currently before the Court that indicates she released any claims through that document. The mere fact that Leo Sandoval is married to Plaintiff does not give him the power to settle claims on her behalf unless she expressly granted him the right to do so and there is no evidence currently before the Court to support that inference. Second, the claims asserted in that Coverage Case and this Class Action are entirely separate and distinct. In the Coverage Case, the issues were (1) who was at fault in the May 21, 2019, accident; (2) whether Leo Sandoval was injured; and (3) whether Leo Sandoval was a Class I insured entitled to policy coverage or an excluded driver with no coverage. The claims in that case belonged to Leo Sandoval alone. In contrast, the claims in this case do not relate to whether Leo Sandoval is covered under the policy. The issues in this Class Action stem from the assertion

that Unique violated New Mexico statutory and common law by failing to properly disclose to Plaintiff the nature of the UIM coverage she was purchasing. As Plaintiff was the policyholder, these claims belong to her and could not be asserted or released by Leo Sandoval.

Unique insists that it should be released from liability because it has already paid out on the policy in its settlement with Leo Sandoval. That assertion overlooks what Unique paid for in the Release, which was settlement of Leo Sandoval's claims that he should be covered under the policy and that in failing to timely pay his claim, Unique was negligent and breached the insurance contract as well as New Mexico laws against unfair trade practices and unfair insurance claim practices. Unique points to the "broad and sweeping language" of the Release to argue that Plaintiff's claims are moot, pointing out that the opening paragraph refers to "any and all liability whatsoever for any and all damages related to the May 21, 2019, accident." Dkt. No. 32 at 2. But Plaintiff's claims in this case do not stem from the May 21, 2019, accident. After all, Plaintiff was not involved in that accident, and nothing in the current record suggests that she had any claims stemming from the accident to bring or to release. The same is true of the payment Unique made to Leo Sandoval in return for releasing his claims for coverage and bad faith handling of his claim. Whether Unique breached its contractual and statutory duties to provide insurance coverage to Leo Sandoval is a separate issue from whether Unique should have disclosed the details of the UIM coverage to Plaintiff as the owner of the policy. Instead, Plaintiff's claims in this case stem from Unique's failure to notify her about the *Schmick* offset and its effect on the UIM coverage she purchased.

Accepted at this stage as true, the factual allegations in the current record do not conclusively demonstrate that the Release signed only by Leo Sandoval resolving claims filed only by Leo Sandoval – which dealt with an automobile collision on May 21, 2019 – also barred the

unrelated claims brought by his wife years later in this case. The record also does not show whether Plaintiff Jeanette Sandoval, despite being neither a party to the lawsuit filed by her husband nor a signatory to the release that resolved it, nonetheless consented to releasing her own separate and unrelated claims. Because of the unsettled nature of the relevant facts surrounding the scope and effect of the release, the Court denies that portion of Defendant's motion without prejudice.

## II. Plaintiff's Claims Are Untimely

### A. *Legal Standard*

"A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). It is therefore generally inappropriate to grant Rule 12(b)(6) dismissal on the basis of an affirmative defense, unless "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1157 (10th Cir. 2026) (quoting *Fernandez*, 883 F.3d at 1299). The statute of limitations defense asserted by the defendant is an affirmative defense. Fed. R. Civ. P. 8(c)(1) (listing statutes of limitations as an affirmative defense). Accordingly, a defendant who seeks to prevail on a motion to dismiss based on the statute of limitations "face[s] a difficult path." *Vasquez-Garcia*, 172 F.4th at 1157.

### B. *New Mexico Law on UI/UIM Insurance Coverage*

In New Mexico, purchasers of automobile liability insurance have the option to purchase insurance to reimburse them for injuries caused by uninsured or underinsured tortfeasor motorists. In *Schmick v. State Farm Mutual Automobile Insurance Co*., 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092, the New Mexico Supreme Court held that an accident victim's insurance company may subtract whatever the driver receives from the tortfeasor's insurance company from the payment

due to its own policyholder for UIM coverage. As a result, if an accident victim incurs damages greater than $25,000 but has a UIM policy of $25,000 per person/$50,000 per accident – and the tortfeasor has liability insurance in the same amount – then the accident victim will receive no additional funds from her own UIM insurer. This is known as the *Schmick* offset rule.

The New Mexico Supreme Court had occasion in 2010 to describe the real-world consequences of the *Schmick* offset rule, albeit not by name. In *Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050 at ¶ 10, 149 N.M. 157, 245 P.3d 1209, the court hypothesized an insured driver with statutory minimum UM/UIM limits suffering injuries valued at more than $25,000 that were caused by the negligence of another driver with statutory minimum liability limits: "The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous. . . An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000." *Id*.

Litigation involving whether and how insurers must disclose the effect of the *Schmick* offset rule began long before Plaintiff filed the instant case. At oral argument, Plaintiff's counsel conceded that as early as 2016, attorneys (including himself and others who are also counsel for Plaintiff) began suing insurance carriers in New Mexico on the grounds that they were selling UM/UIM insurance coverage without informing insureds about the *Schmick* offset and its ramifications. *See, e.g.*, *Bhasker v. Kemper Cas. Ins. Co.*, 17cv260 JB/JHR (D.N.M.) (filed in state court on December 30, 2016, and plaintiff's counsel included attorneys Geoffrey Romero and Kedar Bhasker); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 18cv328 KWR/SCY (D.N.M.) (filed in state court on February 9, 2018); *Crutcher v. Liberty Mut. Ins. Co.*, 18cv412 JCH/KBM (D.N.M.) (filed in state court on February 16, 2018, and plaintiff's counsel included Geoffrey

Romero and Kedar Bhasker); *Apodaca v. Young Am. Ins. Co.*, 18cv399 JB/JHR (filed in state court on February 19, 2018, and plaintiff's counsel included Geoffrey Romero and Kedar Bhasker); *Belanger v. Allstate Fire & Cas. Ins. Co.*, 19cv317 WJ/SCY (D.N.M.) (filed in state court on January 29, 2019, and plaintiff's counsel included Geoffrey Romero and Kedar Bhasker); *Palmer v. State Farm Mut. Auto. Ins. Co.*, 19cv301 KWR/SCY (D.N.M.) (filed in state court on February 13, 2019, and plaintiff's counsel included Geoffrey Romero and Kedar Bhasker). Notably, each of these cases were filed before Plaintiff even *purchased* the policy at issue in the instant case.

In 2021, the New Mexico Supreme Court decided *Crutcher v. Liberty Mut. Ins. Co*., 2022-NMSC-001 at ¶ 1, 501 P.3d 433. Answering a question certified to it by United States District Judge Judith C. Herrera in *Crutcher v. Liberty Mut. Ins. Co.*, 18cv412 JCH/KBM (D.N.M.), the state supreme court harkened back to its decision in *Weed Warrior* some eleven years earlier. *Id*. at ¶ 6. The court held that UIM insurance coverage that offers the statutory minimum amount of $25,000 per person/$50,000 per accident is illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor due to the *Schmick* offset rule. The court deemed the coverage illusory because "it may mislead minimum UM/UIM policy holders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." *Id*. at ¶ 2. The court further held that insurers may sell such a policy and charge a premium "as long as they make a proper disclosure to the policyholder" *id*. at ¶ 28, explaining the legal effect of choosing the statutory minimum amount of UM/UIM coverage. The court reasoned, "[t]he average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the

statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage." *Id*. at ¶ 30.

Just a few years later, in *Smith v. Interinsurance Exch. of the Auto. Club*, 2025-NMSC-004, ¶ 17, 563 P.3d 868, 872, the New Mexico Supreme Court held that its decision in *Crutcher* that UIM coverage at minimum limits is illusory applies retroactively to policies issued before the *Crutcher* decision, such as the policy that Plaintiff purchased from Unique. Importantly, the court reasoned that *Crutcher* was "clearly foreshadowed" by its decision in *Weed Warrior* in 2010. *Id.* at ¶ 13.

***C. New Mexico Law on Statutes of Limitations***

"[A] statute of limitations seeks to further basic fairness to the defendant by encouraging promptness in instituting a claim, suppressing stale or fraudulent claims, and avoiding inconvenience." *N.M. Real Estate Com'n v. Barger*, 2012-NMCA-081, ¶ 16, 284 P.3d 1112 (citations and quotations omitted). The claims in the Complaint here feature varying limitations periods. For example, the limitations period for breach of contract claims is six years. NMSA 1978, § 37-1-3(A). Therefore, if Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count 5) sounds in contract, then the statute of limitations is six years. *Brooks v. State Farm Ins. Co*., 2007-NMCA-033, ¶ 11, 141 N.M. 322, 154 P.3d 697 ("It is a fundamental principle of contract law that the statute of limitations on a breach of contract claim runs from the date the contract is breached.") (alteration, internal quotation marks, and citation omitted).

In contrast, the statute of limitations for claims brought under both the Unfair Practices Act ("UPA") (Count 2) and Unfair Insurance Practices Act ("UIPA") (Count 3) is four years. NMSA 1978, § 37-1-4; *see also Nance v. L.J. Dolloff Associates, Inc*., 2006-NMCA-012, ¶ 22, 138 N.M. 851, 126 P.3d 1215 (stating that with regard to violation of the UPA and the Insurance Code,

"claims ... founded on violations of statutes ... fall within 'other unspecified actions' under the four-year statute of limitations set forth in Section 37-1-4."). Finally, New Mexico's statute of limitations for common law tort claims, such as negligence (Count I), breach of the covenant of good faith and fair dealing to the extent it sounds in *tort* (Count 5), negligent misrepresentation (Count 6), and unjust enrichment (Count 7) is either three years, NMSA 1978, § 37-1-8 (three-year limitations period for personal injury torts), or four years. NMSA 1978, § 37-1-4 (catchall limitations period of four years).[4]

According to the Complaint, Unique issued Plaintiff an automobile insurance policy effective beginning May 18, 2019. Dkt. No. 1-1 at ¶ 7-8. Construing the facts in the light most favorable to Plaintiff, the Court infers that the last date upon which Plaintiff could have purchased the Policy is May 18, 2019. And it is on that date, according to Plaintiff, that Unique breached its duty to disclose the *Schmick* offset to her. Yet Plaintiff did not file her Complaint in state court until September 9, 2025, which is *more than six years* after she purchased the Policy—a period of time greater than the longest limitations period applicable to any of her claims.

The Court's inquiry does not end there, however. In certain circumstances,[5] New Mexico applies the discovery rule, which means that the statute of limitations "period begins to run when the claimant has knowledge of sufficient *facts* to constitute a cause of action." *Gerke v. Romero*, 2010-NMCA-060, ¶ 10, 148 N.M. 367, 237 P.3d 111 (emphasis added). "The discovery rule

[4] Plaintiff does not dispute the applicability of any of these limitations periods. As more fully explained below, however, she does argue that the limitations periods should be tolled.

[5] "New Mexico courts have applied the discovery rule only to certain claims, usually where the wrongdoing may be obscured from view or an injury may not manifest immediately, such as in certain personal injury, professional negligence, fraud, or concealment cases." *Castillo v. Allstate Prop. & Cas. Ins. Co*., 2023 WL 5628142 at *5 (D.N.M. Aug. 31, 2023) (citing cases). The Court need not determine to which claims it should apply the discovery rule, however, because the requirements of the rule are not satisfied here and, with no other mechanism to toll the limitations periods, all of Plaintiff's claims are untimely.

provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Williams v. Stewart*, 2005-NMCA-061, ¶ 12, 137 N.M. 420, 112 P.3d 281 (internal quotation and citation omitted). Thus, a cause of action accrues under the rule in one of two ways: (1) actual knowledge—"when a plaintiff has actual personal knowledge of the facts constituting the cause of action"; or (2) constructive knowledge—"when a plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." *White v. Amber Skies Comm., LLC*, 2026-NMCA-055, ¶ 12, 589 P.3d 128 (quoting *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 34, 140 N.M. 111, 140 P.3d 532.

***D. The Parties' Arguments***

Unique argues that all of Plaintiff's claims are time-barred because she filed her lawsuit more than six years after her claims accrued, which was when she purchased the Policy. Unique alleges that Plaintiff's UPA and UIPA claims accrued when Unique offered UM/UIM coverage to Plaintiff without a *Schmick* disclosure. Unique reasons that, "[a]lthough the complaint does not say exactly when Plaintiff purchased her policy, the purchase had to have taken place before the policy's effective date of May 18, 2019, so her statutory claims accrued no later than then." Dkt. No. 25 at 9-10. Unique also asserts that Plaintiff may not avail herself of the discovery rule because when she purchased the Policy in May 2019, "she had all the facts necessary to bring this lawsuit because she had experienced the insurance-selection process and seen the disclosures [Unique] provided its consumers." *Id*. at 12.

In response, Plaintiff argues that the Court should not dismiss her claims on a Rule 12(b)(6) motion because her Complaint (Dkt. No. 1-1) does not establish untimeliness on its face, but rather affirmatively alleges that Unique engaged in fraudulent concealment of its illusory coverage. Dkt.

No. 30 at 10. Plaintiff argues that her assertions of fraudulent concealment not only demand equitable tolling of the statute of limitations but also raise fact questions not amenable to determination on a motion to dismiss. Dkt. No. 30 at 9. Furthermore, she contends that the statute of limitations did not begin to run until 2022, when Unique provided its insureds with revised disclosures in response to *Crutcher*. Dkt. No. 1-1 at ¶ 14. Plaintiff emphasizes that Unique did not revise its UM/UIM disclosures to alert insureds about the true nature of their coverage until 2022, when it revised its disclosures after *Crutcher* was decided. Dkt. No. 30 at 11. According to Plaintiff, the revised disclosures provided actual or constructive notice of the true nature of its UIM coverage such that her claim did not accrue until that date. Dkt. No. 1-1 at ¶ 16. Plaintiff argues that until that time, the discovery rule tolled the statute of limitations on her claims.

***E. The Facts Known to Plaintiff When She Purchased Her Policy in May 2019***

As previously discussed, the Court will consider the well-pled factual allegations of the Complaint, the Policy, and the declarations page in the light most favorable to Plaintiff to determine what facts she had available to her in May 2019 when she purchased the policy.

First, Plaintiff knew that she purchased a policy from Unique that ostensibly included UIM/UM coverage limits of $25,000 per person/$50,000 per occurrence. Complaint, Dkt. No. 1-1 at ¶ 10. Plaintiff also knew that some portion of her premium was charged to pay for the UIM coverage. *Id*. at ¶ 11. She also knew that the Policy stated in "Part C – Uninsured Motorists Coverage," that the Policy would cover damages caused by an underinsured vehicle where "the liability insurer of such [underinsured] vehicle has provided limits of bodily injury liability for its insured *which are less than* the limits applicable to the injured person provided under this uninsured motorist coverage or as required by law." *Id*. at 39 of 53, page 8 of the Policy (emphasis added). This is the *Schmick* offset rule. Accordingly, Plaintiff knew or should have known that as

a result of this policy language, circumstances could arise under which she would receive no benefit from her UIM coverage, the most likely circumstance arising if she is injured by an underinsured motorist having liability limits that matched her UIM limits. By the terms of her Complaint and the Policy she attached thereto, Plaintiff knew or should have known these *facts* in May 2019. Whether Plaintiff also knew the *legal consequences* of these facts, as explained *infra*, is immaterial.

***E. Analysis***

The question before the Court is whether, in light of Plaintiff's allegations in the Complaint and the attached Policy, there is any set of facts under which Plaintiff could successfully argue that her claims are timely as a result either of equitable tolling of the statutes of limitations or application of the discovery rule. Even viewing everything in the light most favorable to Plaintiff, the Court concludes that there is no such set of facts.

1. Equitable Tolling and Fraudulent Concealment

In *Hollis v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 25-2059, 2026 WL 555505 at *4-5 (10th Cir. Feb. 27, 2026) (unpublished)[6], the Tenth Circuit described the elements of equitable tolling, fraudulent concealment, and the relationship between them:

> In New Mexico, equitable tolling is a non-statutory tolling principle that provides relief in cases when circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations. One relying upon equitable tolling must establish that (1) he has been pursuing his rights diligently and (2) that some extraordinary circumstance prevented him from doing so. If equitable tolling applies, the limitation period is suspended.
> …
> An extraordinary event that could toll the limitations period is fraudulent concealment, where conduct by a defendant . . . caused the plaintiff to refrain from filing an action during the applicable period. Fraudulent concealment in this context requires: (1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party

[6] The Court recognizes that *Hollis* is an unpublished opinion. In accordance with Tenth Circuit Rule 32.1, the Court cites it for its persuasive value only.

> claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action.

*Id*. (internal citations and quotations omitted). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

As to the first element of equitable tolling, Plaintiff has not discussed in her Complaint or her briefing whether she has attempted to pursue her rights diligently. Plaintiff has alleged that the Policy she purchased disclosed the *Schmick* offset on page 8. Missing from Plaintiff's argument is any suggestion that she investigated the meaning of that policy language in an attempt to pursue her rights, and she certainly does not allege that after she bought the Policy someone actively misled her about its meaning. Limited in what it may consider on a motion to dismiss, however, the Court assumes without deciding that Plaintiff has diligently pursued her rights.

As to the second element – alleging an extraordinary circumstance that prevented Plaintiff from exercising her rights – Plaintiff asserts that the extraordinary circumstance here is that Unique fraudulently concealed from her the true nature of her UIM coverage. She alleges that Unique's "application materials, forms and declarations misrepresented or failed to clearly disclose that the UIM coverage was subject to the Schmick offset and thus, in many instances, provided no real value." Dkt. No. 1-1 at ¶ 12.

Therefore, the Court must consider the elements of fraudulent concealment under New Mexico law. Regarding the first two elements—Unique's use of fraudulent means to successfully conceal its illusory UIM coverage from Plaintiff—Plaintiff asserts that Unique's "fraudulent means" was its failure to disclose the *Schmick* offset when she purchased the Policy such that there was no way she could have known that Unique would provide her with no UIM coverage if she

was injured by a tortfeasor who carried the same or greater liability limits as her UIM coverage. As noted *supra* at 13-14, the Policy itself stated that it covers damages caused by an underinsured vehicle where "the liability insurer of such [underinsured] vehicle has provided limits of bodily injury liability for its insured *which are less than* the limits applicable to the injured person provided under this uninsured motorist coverage or as required by law." This language cautioned the reader that UIM benefits would be paid only if the insured's UIM limits were *higher* than the tortfeasor driver's liability limits. According to the language of the Policy, which the Court may consider on a motion to dismiss, Unique disclosed the functional effect of the *Schmick* offset to Plaintiff, rather than "concealed" it from her. Therefore, the first and second elements are not satisfied.

The third element of fraudulent concealment is that Plaintiff did not know or by the exercise of reasonable diligence could not have known that she might have a cause of action. Plaintiff does not argue that she could not have reasonably discovered within the limitations period that she had a cause of action against Unique. She does not dispute that other insureds – many represented by the same attorneys who represent her – had been filing claims against insurers who failed to disclose the *Schmick* offset *for nearly nine years* before she filed her lawsuit in 2025 (and three years before she even bought her policy). Nor does she explain how with the exercise of reasonable diligence she could not have done the same. In the words of the Tenth Circuit in *Hollis*, Plaintiff seems to assert that "any time policy documents are later determined to be deficient or ambiguous and the insurer has not previously stated as such, the limitation period is tolled." *Hollis*, 2026 WL 555505 at *5. But the Tenth Circuit rejected that argument in language this Court finds persuasive: "[W]e find no support for the notion that in New Mexico, statutes of limitation do not apply to actions involving insurance policies. And we would be reticent to expand state law without clear

guidance from the State's highest court particularly where such an expansion would affect the important policies behind repose." *Id*. at *6. For these reasons, Plaintiff has also failed to establish the third element of fraudulent concealment.

Plaintiff's reliance on *Slusser v. Vantage Builders, Inc*., 2013-NMCA-073, 306 P.3d 524, for her fraudulent concealment theory is unavailing. In *Slusser*, the plaintiff sued her former employer for age discrimination following her termination. *Id*. at ¶ 1. At the time, the employer told the plaintiff that the termination was due to a restructuring of her department and that she was no longer needed. *Id*. at ¶ 2. The plaintiff later discovered, however, that a younger woman had replaced her. *Id*. at ¶ 3. She argued that the limitations period should be equitably tolled until she learned or should have learned that her employer had replaced her with a younger person because the employer had misled her regarding the reason for her termination. *Id*. at ¶ 1. According to the plaintiff, the employer had fraudulently concealed her cause of action by telling her the termination was due to restructuring. *Id*. at ¶ 23. The *Slusser* court rejected that argument, concluding that it improperly "merges the substantive wrong," i.e., termination of plaintiff's employment based on age discrimination, with an act of "active concealment" that prevented her from filing her claim. *Id*. at ¶¶ 23-24. Instead, fraudulent concealment required "active steps, independent of the underlying allegedly tortious conduct, to prevent the plaintiff from filing her age discrimination claim on time." *Id*. at ¶ 24. As a result, the *Slusser* court found there was no fraudulent concealment.

That is the same situation presented in this case. Plaintiff alleges fraudulent concealment, but she claims that the concealment arose from the exact same facts as the basis of her claims—that is, that Unique sold her a UIM policy in May 2019 without fully informing her of the *Schmick* offset. She does not allege any concealment of her rights after that point. In fact, she alleges the

opposite: that Unique more fulsomely disclosed the *Schmick* offset in its 2022 disclosures. The very facts alleged in Plaintiff's Complaint demonstrate that under New Mexico law the statute of limitations should not be tolled due to fraudulent concealment.

For these reasons, the Court concludes that Plaintiff has not carried her burden to establish that her claims are subject to equitable tolling.

2. <u>The discovery rule</u>

As previously discussed, the discovery rule provides that the limitations period begins to run when a plaintiff has actual personal knowledge of the facts constituting the cause of action or when she knows facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the cause of action.

In this case, as the policyholder, Plaintiff knew or should have known every fact necessary for her cause of action when she received the Policy from Unique in May 2019.[7] At that time, Plaintiff knew or should have known that she was paying some portion of her monthly premium for the minimum $25,000/$50,000 UIM benefit set forth in the Policy. She also knew or should have known, based on the description of the UIM coverage in the policy, that she would receive nothing from her UIM policy if she was injured by a tortfeasor carrying liability limits on their own insurance policy that were the same or greater than the UIM limits on her Policy. That Plaintiff in May 2019 may have been unaware that New Mexico law allowed her to sue her insurer for charging her for this type of UIM coverage is irrelevant. In New Mexico, lack of knowledge of the law does not toll, suspend, or otherwise postpone the statute of limitations; rather, "[t]he key consideration under the discovery rule is the factual, not the legal, basis for the cause of action."

[7] The Court does not suggest that Plaintiff had any specific knowledge or information about the illusory nature of her UIM coverage as a result of the Coverage Case brought by her husband. Rather, this knowledge is attributable to Plaintiff as the purchaser and owner of the Policy.

*Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24, 876 P.2d 656, 664; *see also Slusser v. Vantage Builders*, 2013-NMCA-073 at ¶ 8, 306 P.3d 524 ("With regard to the discovery rule, our case law thus plainly differentiates between discovering the existence of predicate facts to a cause of action and discerning the theory of law under which to proceed."); *Maestas v. Zager*, 2007-NMSC-003 at ¶ 21, 141 N.M. 154, 152 P.3d 141 ("The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action.").

Accordingly, the Court concludes that in May 2019, Plaintiff obtained the necessary facts to file her claims, regardless of whether she understood the law well enough to know she had claims to bring. Although New Mexico law does not require a plaintiff to know the law or to consult with a lawyer to interpret an insurance policy, neither does New Mexico law suspend statutes of limitations until a plaintiff learns the law. Nothing prevented Plaintiff from filing this lawsuit in June 2019; indeed, she had all the facts she needed in order to do so. Plaintiff has not demonstrated that the discovery rule delayed the date on which her claims in this lawsuit accrued.

Plaintiff's argument that she could not have known of the facts underlying her cause of action until 2022, when Unique revised its disclosures, is a red herring. So too is her contention that she could not have known about her claims before the New Mexico Supreme Court issued its decision in *Crutcher v. Liberty Mut. Ins. Co*., 2022-NMSC-001, 501 P.3d 433. This is for two reasons. First, both of Plaintiff's arguments distract from the central inquiry, which is when Plaintiff knew or should have known of the *facts*—and not the law—that provide the basis for her claim. Second, neither the *Crutcher* decision nor Unique's 2022 disclosures changed the *facts* already known to Plaintiff or the law underpinning her claims. *See Smith v. Interinsurance Exch. of Auto. Club*, 2025-NMSC-004, ¶ 17, 563 P.3d 868 (noting that *Crutcher* did not create a new

rule of law). Since at least the 2010 *Weed Warrior* decision, the New Mexico Supreme Court has made clear that the *Schmick* offset renders UIM superfluous for those who carry only the statutory minimum liability limits. As previously noted at 8-9, *supra*, attorneys in New Mexico certainly did not wait until the *Crutcher* case was decided before filing lawsuits alleging the exact same claims brought here. Indeed, *before* that case was decided, Plaintiff's own counsel had filed at least five cases asserting the same theories she asserts here, *see supra* at 8-9 – including the *Crutcher* case itself. The fact that plaintiffs in other cases (including several litigated by Plaintiff's counsel in this case) were bringing these exact claims as early as 2016 and quite regularly by early 2019 demonstrates that Plaintiff had the facts she needed to file her lawsuit no later than June 2019. It is clear beyond any reasonable debate that Plaintiff had a plausible claim years before the *Crutcher* case was decided or Unique amended its disclosures.

In conclusion, the allegations in the Complaint along with the Policy documents attached thereto demonstrate that Plaintiff knew, or should have known, of the factual basis for her claims when she purchased the Policy in May 2019. The various statutes of limitations applicable to Plaintiff's claims began to run at that time and had all expired before she filed her lawsuit in September 2025. Therefore, the Court finds and concludes that each of her claims is time-barred.

## III. STANDING AND RULE 12(b)(6) FAILURE TO STATE A CLAIM

Having found and concluded that Plaintiff's claims are untimely and should be dismissed on that basis, the Court need not reach Unique's arguments that Plaintiff lacks standing to seek prospective injunctive relief or that her Complaint otherwise fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**IT IS THEREFORE ORDERED** that Defendant Unique Insurance Company's Motion to Dismiss for Failure to State a Claim [Dkt. Nos. 25, 27] is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.[8]

**UNITED STATES MAGISTRATE JUDGE**
***Presiding by Consent***

[8] *Hollis v. Farm Bureau Prop. & Cas. Ins. Co.*, 2026 WL 555505 at *3 n.4 (10th Cir. Feb. 27, 2026) (unpublished) ("When a motion to dismiss is granted on limitations grounds the dismissal is in effect a dismissal with prejudice.").