**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JEANETTE R. SANDOVAL, individually and on behalf of others similarly situated,

Plaintiff,

Case No.: 1:25-cv-01211-GJF-LF

vs.

UNIQUE INSURANCE COMPANY,

Defendant.

**PLAINTIFF'S MOTION TO ALTER OR AMEND MEMORANDUM OPINION AND ORDER DOC. 40, AND TO RECONSIDER DISMISSAL OF CLASS COMPLAINT, DOC. 41**

COMES NOW Plaintiff, by and through her counsel of record, and files this motion to alter or amend the Memorandum Opinion and Order (Doc. 40) ("MOO") and to reconsider dismissal pursuant to Federal Rules of Civil Procedure Rule 59(e), motion to alter or amend the judgment, and Rule 60, relief from a judgment or order. The MOO, either separately or in combination with the Final Order of Dismissal (Doc. 41), is the Court's Final Judgment. The Federal Rules of Civil Procedure do not recognize a motion to reconsider. Therefore, the Court must construe a motion to reconsider in one of two ways: If the motion is filed within twenty-eight days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment. *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (*citing* Fed. R. Civ. P. 59(e)). If the motion is filed more than twenty-eight (28) days after the district court's entry of judgment, it is treated as a motion for relief from a judgment or order. *See* Fed. R. Civ. P. 60.

Appropriate grounds for a Rule 59(e) motion include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.

2000). A Rule 59(e) motion is appropriate where a court has misapprehended the facts, a party's position, or the controlling law. *See id*. Rule 59(e) may not be used to re-litigate old matters or raise arguments or present evidence that could have been raised prior to the entry of judgment. *See Steele v. Young*, 11 F.3d 1518, 1520, n.1 (10th Cir. 1993). The district court is vested with considerable discretion in determining whether to grant, or deny, a Rule 59(e) motion. *See Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

This motion is to correct clear error, and prevent manifest injustice, as recognized by *Arnold versus Farmers Insurance Company of Arizona*, No. CIV 09–0330 JB/WDS 2012 WL 1684537 *8 (Dist. Ct. N.M. May 10, 2012). This Court has misconstrued *Crutcher versus Liberty Mutual Insurance Company*, 2022-NMSC-001, ¶ 1, 501 P.3d 433 and *Smith versus Interinsurance Exch. of the Automobile Club*, 2025-NMSC-004, ¶ 17, 563 P.3d 868, 872. This Court has disregarded that New Mexico requires a qualitatively different analysis regarding Uninsured Motorist ("UM") coverage because of the public policy and legislative intent embodied in the statute, Section 66-5-301, which requires that policyholders must be fully informed of the relative benefits and limitations of a given policy. *See Crutcher*, 2022-NMSC-001, ¶ 30; *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M. 162 (stating: "When construing the legislative intent behind our UM/UIM statute, this Court has long applied a 'qualitatively different analysis' than we use when construing many other types of statutes and insurance policies.")(quoting *Padilla v. Dairyland Ins. Co.*, 1990-NMSC-025, ¶ 10, 109 N.M. 555, 787 P.2d 835). *See also e.g.*, *Federated Serv. Ins. Co. v. Martinez*, 529 Fed. Appx. 954, 957 (10th Cir. 2013) (recognizing longstanding adherence by New Mexico courts to applying this "qualitatively different analysis" applied in the UM/UIM context); *Arnold v. Farmers Ins. Co. of Az.*, 827 F. Supp. 2d 1289, 1296 (D.N.M. 2011) (recognizing the New Mexico Supreme Court's interpretation of the Uninsured Motorist Act under

the "qualitatively different analysis"). This Court has created a new rule that an insured should discover policy defects, for purposes of the commencement of a statute of limitations tolling, despite the very defect being the failure to properly disclose. The sole basis for the Court's dismissal was that the case was filed too late for any applicable statute of limitations. As shown herein, the Court did not follow New Mexico law in determining when such a claim accrued.

**A. The Court applied the incorrect legal standard for a motion to dismiss.**

A Rule 12(b)(6) motion does not allow fact-finding; the Court must accept well-pleaded factual allegations as true after setting aside mere legal conclusions. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Grim v. FEDEX Ground Package Sys., Inc.*, No. CV 19-10 MV/GBW, 2019 WL 2298804, at *2 (D.N.M. May 30, 2019).

> Under this standard, 'all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party,' *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and ellipsis omitted), but the pleadings must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). To achieve 'facial plausibility,' a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.*

*Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018).

> As best we understand it, however, the opinion seeks to find a middle ground between "heightened fact pleading," which is expressly rejected, *Twombly,* 127 S.Ct. at 1974; *see also id.* at 1964 (a complaint "does not need detailed factual allegations"), and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated "will not do." *Id.* at 1965.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In reaching its conclusion, this Court engaged in fact finding. The Court's MOO analyzes the efforts of Plaintiff's counsel, and other counsel, in various UM/UIM cases not before the Court.

*See* Doc. 40, at 8-9, 20 ("Plaintiff's own counsel had filed at least five cases asserting the same theories she asserts here, *see supra* at 8-9 – including the *Crutcher* case itself. The fact that plaintiffs in other cases (including several litigated by Plaintiff's counsel in this case) were bringing these exact claims as early as 2016 and quite regularly by early 2019 demonstrates that Plaintiff had the facts she needed to file her lawsuit no later than June 2019."). This is an example of unpermitted factual finding. These facts were not in the pleadings. The Court is not accepting well-pleaded factual allegations as true. Plaintiff's Complaint alleges her insurance application and policy issued by Defendant failed to advise her that UIM coverage is "illusory" in the event of an accident involving a minimally insured driver. *See* Complaint (Doc. 1-1) (filed September 9, 2025) ¶¶ 21-28, at pp. 8-10. Contrary to Rule 12(b)(6), this Court did not accept Plaintiff's well-pleaded factual allegations as true. Instead, the Court subjectively questioned what Plaintiff knew, or should have known, because of her counsel. Then this Court went beyond subjectively questioning what Plaintiff knew and made an actual, factual finding contrary to the factual finding in *Crutcher*.

**B. The Court's inference of knowledge to the insured violates New Mexico law regarding an insurer's duty to disclose and when knowledge can be inferred to a policyholder.**

In its MOO (Doc. 40), the Court infers knowledge to the insured Plaintiff based upon the litigation brought by other insureds against other insurance carriers. The Court reasoned that because some of the counsel representing Ms. Sandoval had represented other insureds filing similar lawsuits against other insurance carriers that Ms. Sandoval should have been able to discover her policy made inadequate disclosures about the *Schmick* offset. The Court goes on to state that Plaintiff seems to assert "any time policy documents are later determined to be deficient or ambiguous and the insurer has not previously stated as such, the limitation period is tolled." Doc. 40, at 16 (citing *Hollis v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 25-2059, 2026 WL

555505, at *5 (10th Cir. February 27, 2026)). This Court then embraced language from the *Hollis* opinion in which the 10th Circuit stated: "[W]e find no support for the notion that in New Mexico, statutes of limitation do not apply to actions involving insurance policies. And we would be reticent to expand state law without clear guidance from the State's highest court particularly where such an expansion would affect the important policies behind repose." Doc. 40, at 16-17 (quoting *Hollis*, 2026 WL 555505, at *6).

The State's highest court has already provided such guidance in the context and interpretation of uninsured motorist coverage, and claims arising thereunder:

> This Court's primary goal when interpreting statutes is to further legislative intent. *Jolley v. Associated Elec. & Gas Ins. Servs. Ltd.*, 2010–NMSC–029, ¶ 8, 148 N.M. 436, 237 P.3d 738. When construing the legislative intent behind our UM/UIM statute, **this Court has long applied a 'qualitatively different analysis' than we use when construing many other types of statutes and insurance policies.** *Padilla v. Dairyland Ins. Co.*, 109 N.M. 555, 558, 787 P.2d 835, 838 (1990). In a consistent line of cases, this Court has liberally interpreted Section 66–5–301 and its implementing regulation, now codified as 13.12.3.9 NMAC, for their r**emedial purposes.** *See Phoenix Indem. Ins. Co. v. Pulis*, 2000–NMSC–023, ¶ 7, 129 N.M. 395, 9 P.3d 639; *Romero v. Dairyland Ins. Co.* (*Romero v. Dairyland*), 111 N.M. 154, 155–56, 803 P.2d 243, 244–45 (1990). **The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be 'construed strictly to protect the insured.'** *Romero v. Dairyland*, 111 N.M. at 156, 803 P.2d at 245; *see also Weed Warrior*, 2010–NMSC–050, ¶ 14, 149 N.M. 157, 245 P.3d 1209 (explaining that our statutory scheme requires that insurers offer the maximum amount of UM/UIM coverage possible).

*Jordan*, 2010-NMSC-051, ¶ 15 (bolding added). The qualitatively different analysis has been recognized by other courts in this district. In *Arnold versus Farmers Insurance Company of Arizona*, 827 F. Supp.2d 1289 (D.N.M. 2011), Judge Browning stated:

> The Supreme Court interprets the UMA in a significantly different way than it does other statutes to effectuate the UMA's remedial purpose. In *Jordan v. Allstate Ins. Co.*, 149 N.M. 162, 245 P.3d 1214 (2010), the Supreme Court of New Mexico recently emphasized: 'When construing the legislative intent behind our UM/UIM statute, this Court has long applied a "qualitatively different analysis" than we use when construing many other types of statutes and insurance policies.' 149 N.M.

> 162, 245 P.3d 1214, 1219. It also stated that, '[i]n a consistent line of cases, this Court has liberally interpreted [the UMA] and its implementing regulation ... for their remedial purposes.' *Jordan v. Allstate Ins. Co.*, 149 N.M. 162, 245 P.3d at 1219.

*Arnold*, 827 F.Supp.2d at 1296.

Further, the Supreme Court of New Mexico has also repeatedly given guidance on what an insured is reasonably expected to understand in an insurance policy. In *Crutcher*, the Supreme Court reiterated that it "remains concerned about an average policyholder's understanding of the true limits" of underinsured motorist coverage. *Crutcher*, 2022-NMSC-001, ¶ 29. In *Crutcher*, the Supreme Court also reiterated its prior holding in *Romero versus Dairyland Insurance Company*, 1990-NMSC-111, 111 N.M. 154, 803 P.2d 243. *See Crutcher*, ¶ 31 (citing *Romero*, 1990-NMSC-111, ¶ 17). The paragraph from *Romero*, which was cited by the Supreme Court in *Crutcher*, states:

> Given the realities of the automobile liability insurance business in which the unfamiliar terminology of a policy describes coverage under complex rights and obligations of personal injury and liability law, given an insured who is unsophisticated in business affairs, and given the public policy favoring insurance coverage for personal injury and liability arising from the operation of motor vehicles, we question whether the language quoted from *State Farm Fire & Casualty Co. v. Price* regarding the duty to read one's insurance policy can have very general application. The exception is the more appropriate rule as this Court has stated in the past.
>
>> We will not simply mechanically charge Mr. Pribble with the duty of reading and understanding the policy and certificate and then bar him from recovery by a literal application of its terms and provisions * * *. [W]e hold that Mr. Pribble * * * was only bound to make such examination of such documents as would be reasonable for him to do under the circumstances; that he will only be held to that which he would be thereby alerted; and if the language is such that a layman would not understand its full impact were he to attempt to plow through it, the documents will yield the maximum protection consistent with their language and the reasonable expectation of Mr. Pribble.
>
> *Pribble v. Aetna Life Ins. Co.*, 84 N.M. 211, 216, 501 P.2d 255, 260 (1972), *appeal after remand,* 86 N.M. 299, 523 P.2d 543 (1974). In any event, as we recently stated in *Sanchez v. Herrera*, 109 N.M. 155, 783 P.2d 465 (1989), unambiguous

> exclusionary language is controlling only when not in conflict with public policy, as promulgated by the uninsured motorist statute and applicable regulations. *See also Padilla v. Dairyland Ins. Co.*, 109 N.M. 555, 787 P.2d 835 (1990); *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (1985); *White v. Singleton*, 88 N.M. 262, 539 P.2d 1024 (Ct.App.1975). Public policy clearly favors uninsured motorist coverage for the protection of persons insured under automobile liability policies, and no rejection of uninsured motorist coverage is effective unless endorsed, attached, stamped or otherwise made a part of the policy.

*Romero*, 1990-NMSC-111, ¶ 17.

By holding an insured to a standard that she should have read the policy and understood the mechanical language of it this Court's opinion is squarely in conflict with principles long established by the Supreme Court of New Mexico. To the extent this Court disagrees that the principles set forth by the Supreme Court would not serve to toll a statute where there is an allegation of inadequate disclosure, then this is a ripe issue for certification of a question to the Supreme Court.

Requiring an insured to read and understand complicated language of the policy, which did not adequately disclose an exclusion to underinsured motorists coverage, reverses the burden of clear disclosure by insurers, and places a burden on insureds to be knowledgeable experts on underinsured motorists coverage, or consult a legal expert in the field, or lose their rights if they do not become aware of the violation or failure to disclose until three (3), four (4) or six (6) years after the purchase of the policy.[1] Such an outcome is inconsistent with the qualitatively different analysis required by Court's construing and interpreting UM/UIM coverage, and claims arising

---

[1] Plaintiff's Complaint brings various claims, all which have varying statute of limitations periods, and as such, the claims have either a three (3), four (4), or six (6) year statute. *See* NMSA 1978, § 37-1-3(A) (the limitations period for breach of contract claims is six years); *see also Nance v. L.J. Dolloff Associates, Inc.*, 2006-NMCA-012, ¶ 22, 138 N.M. 851, 126 P.3d 1215 (stating that with regard to violation of the UPA and the Insurance Code, "claims ... founded on violations of statutes ... fall within 'other unspecified actions' under the four-year statute of limitations set forth in Section 37-1-4."); NMSA 1978, § 37-1-8 (three-year limitations period for personal injury torts); NMSA 1978, § 37-1-4 (catchall limitations period of four years).

thereunder, and inconsistent with the public policy expressed by the legislature and consistently recognized by the Supreme Court of New Mexico for decades. It is also explicitly inconsistent with the Supreme Court of New Mexico's opinion in *Crutcher*, wherein it stated: "We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language." *Crutcher*, 2022-NMSC-001, ¶ 26. In granting Defendants' Motion for Summary Judgment, this Court imposes such obligation on the insured, contrary to New Mexico law.

**C. The *Crutcher* Opinion made a factual finding of misrepresentation.**

In *Crutcher*, United States District Judge Judith Herrera certified, and the Supreme Court of New Mexico accepted, the following question:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mutual Insurance* Company, 1:18-cv-412, Doc. 53 at 8, Certification Order to the N.M. Supreme Ct. (D.N.M. Jan. 9, 2019) (the "certified question").

The Supreme Court of New Mexico answered the certified question, concluding that (1) underinsured motorist coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) insurers were permitted by statute to charge premiums for minimum limit underinsured motorist coverage as long as the limitations of the coverage were disclosed to insureds in the form of an "exclusion." *Crutcher*, 2022-NMSC-001, ¶ 33. "Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage." *Id.* ¶ 2. The *Crutcher* court concluded that "this type of policy is illusory in that it may mislead

minimum UM/UIM policy holders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." *Id.* ¶ 33.

This Court's ruling contradicts *Crutcher*. The *Crutcher* Court did not analyze what information was available to a variety of counsel across numerous cases. *See generally Crutcher*, 2022-NMSC-001. The *Crutcher* Court found that the substantially same disclosures, which were plead in this matter, were illusory. *See Crutcher*, 2022-NMSC-001, ¶ 33 (stating: "For the foregoing reasons, we conclude that UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold as was done so here. **However, such coverage is illusory because it is misleading to the average policyholder. As such we will now require every insurer to adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy**. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage.")(bolding added). The Supreme Court of New Mexico, in *Crutcher*, further held "**that an insurer must adequately disclose** the limitations of minimum UM/UIM coverage—namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. **Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage**." *Crutcher*, 2022-NMSC-001, ¶ 2 (bolding added). Thus, this Court has effectively ruled that the prior disclosure was adequate, contrary to the Supreme Court of New Mexico's holding in *Crutcher*.

*Crutcher* frames the issue as one of consumer deception and failure to disclose, holding that insurers may not charge premiums for minimum limits UIM coverage without informing insureds that they "may never receive underinsured motorist coverage." *Id.* ¶ 2. Illusory in this context means misleading, not contractually void. *See id.* ¶ 23.

This Court's reasoning ignores that the duty imposed is one (1) of adequate disclosure, not merely compliance with statutory structure. And that the disclosure is in the form of an exclusion. *Crutcher*, 2022-NMSC-001, ¶¶ 31-33. This Court piecemealed allegations from other cases not before it to hold that Plaintiff should have known earlier that she was being cheated, all while ignoring Unique's disclosure obligation. This Court ignores the broader reasoning that the deception arises from the misrepresentation between what is promised, the level of underinsured motorists coverage listed on the declarations page, and what can actually be recovered. That misrepresentation exists whenever the *Schmick* offset reduces or eliminates benefits. *Crutcher*, as well as *Smith versus Interinsurance Exchange of the Automobile Club*, 2025-NMSC-004, 563 P.3d 868[2], confirm that a tortfeasor may never qualify as "underinsured", rendering recovery unavailable and as a result, misleading.

The Court also ignores the core spirit of New Mexico insurance law, which protects insureds due to the power imbalance between insureds and their insurers:

As this Court explained in *Sanchez v. Herrera,*

> [t]he typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost. Not only does the insurance company draft the documents, but it does so with far more knowledge than the typical insured of the consequences of particular words.

[2] In *Smith*, the Supreme Court of New Mexico confirmed that *Crutcher* applied retroactively. *See* 2025-NMSC-004 (stating: "Accordingly, *Crutcher* did not create a new rule under the *Beavers* framework. *See Beavers*, 1994-NMSC-094, ¶ 23, 118 N.M. 391, 881 P.2d 1376 (stating that a new rule of law may be established by, in relevant part, 'deciding an issue of first impression whose resolution was not clearly foreshadowed'). Furthermore, considering 'the prior history of the rule in question [and] its purpose and effect,' we can only conclude that retroactive application will further its operation. *See id*. While the prospective application of the *Crutcher* holding would perpetuate the illusion identified in *Weed Warrior* and prevent those with illusory UIM insurance coverage prior to *Crutcher* from pursuing claims of misrepresentation, retroactive application will further the policies set out in our prior application of our uninsured motorist statute, requiring that coverage decisions by an insured be knowing and intelligently made. *See Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 9, 111 N.M. 154, 803 P.2d 243. Finally, given that no new rule was created in *Crutcher*, Defendant was not entitled to rely on pre-*Crutcher* authority, and it is not inequitable to apply *Crutcher* retroactively. *See* Beavers, 1994-NMSC-094, ¶ 38, 118 N.M. 391, 881 P.2d 1376. In sum, we conclude that the presumption of retroactivity has not been overcome."

> 109 N.M. 155, 159, 783 P.2d 465, 469 (1989).
>
> Cognizant of this imbalance in power, 'as a matter of public policy' courts 'generally construe[ ]" ambiguities "in favor of the insured and against the insurer.' *Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000–NMSC–033, ¶ 26, 129 N.M. 698, 12 P.3d 960; *see also* 2 Steven Plitt et al., *Couch on Insurance* § 22:14 (3d ed. 2010). Where a term in an insurance policy is found to be ambiguous, '[t]he court's construction of [the] policy will be guided by the reasonable expectations of the insured.' *Rummel,* 1997–NMSC–041, ¶ 22, 123 N.M. 752, 945 P.2d 970; *see also Phx. Indem. Ins. Co. v. Pulis,* 2000–NMSC–023, ¶ 23, 129 N.M. 395, 9 P.3d 639 (quoting *W. Commerce Bank v. Reliance Ins. Co.,* 105 N.M. 346, 348, 732 P.2d 873, 875 (1987)) ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean."). Finally, '[i]t is unnecessary to show that a construction against the insurer is more logical than a construction against the insured,' so long as both constructions are reasonable. 2 Plitt, *supra,* § 22:17, at 22–98 to 22–99.

*United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶¶ 10-11, 285 P.3d 644.

This Court's decision is particularly misplaced in light of the New Mexico Unfair Practices Act ("UPA") and Unfair Insurance Practices Act ("UIPA"). The New Mexico UPA and UIPA claims have a causation element and do not require actual reliance. *See Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 20-21, 135 N.M. 265, 87 P.3d 545. Moreover, Section 57–12–2(D)(14) of the UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only tends to deceive." *Id. See also Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (noting that, as to Hawaii statute similar to New Mexico UPA and UIPA, Ninth Circuit held that "[t]hese plaintiffs base their lawsuit only on what Midland did not disclose to them in its forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.").

Finding that Plaintiff should have known to sue earlier means that this Court believes that the disclosure pre-*Crutcher* was adequate. This is in conflict with the language in *Crutcher,* which

found that the language buried in the policy is inadequate. *See Crutcher*, 2022-NMSC-001, ¶ 2. This means that with similar disclosures as plead, the claims do not begin to accrue until following *Crutcher* when insurers gave their insureds the Supreme Court required notice. The Supreme Court has repeatedly recognized an insurer's obligation to fully inform the policyholder of the relative benefits and limitations of a given policy, and it flows that the failure to disclose amounts to ongoing misconduct and deceit by the insurer, for which the insured should not be punished. This ongoing misconduct tolls the statute of limitations. The Court's finding to the contrary in its MOO improperly substituted its judgment for the New Mexico Supreme Court, and Plaintiff requests reconsideration for the reasons stated herein.

**Conclusion**

The statute of limitations on Plaintiff's claims did not begin to run until Defendant issued its revised notice in 2022 following the *Crutcher* opinion. The *Crutcher* opinion held that substantially similar disclosures in that case were inadequate as a matter of law. This Court simply concluded otherwise. Respectfully, the Court is in error.

Respectfully submitted,

*/s/ Richard Valle*

Richard Valle
Andrea D. Harris
VALLE, O'CLEIREACHAIN, ZAMORA & HARRIS
1805 Rio Grande Blvd. NW, Suite 2
Albuquerque, New Mexico 87104
(505)888-4357
adh@vozhlaw.com
rv@vozhlaw.com

and

Kedar Bhasker
BHASKER LAW
2741 Indian School Road NE
Albuquerque, New Mexico 87106
Phone: (505)-407-2088
Kedar@bhaskerlaw.com

and

Geoffrey R. Romero
Nikko Harada
Christopher P. Winters
ROMERO, HARADA, & WINTERS, LLC
4801 All Saints Road NW, Suite A
Albuquerque, NM 87120
(505) 247-3338
geoff@rhwlawnm.com
nikko@rhwlawnm.com
chris@rhwlawnm.com

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 9, 2026, the foregoing was electronically filed through the Court's CM/ECF File & Serve system, which caused counsel to be served by electronic means.

_*/s/ Richard J. Valle*___________
Richard J. Valle